Ralph M. MADDOX, Marie Maddox, Clifford Nolte, Richard Evans, and Joseph E. Breidinger, Plaintiffs/Defendants to Counterclaims/Appellants,

v.

Louie KATZMAN, Emma Louise Paterson, Marvelle Feller, Lucille Hahn, James E. Bonnstetter, Mavis A. Bonnstetter, Andrew C. Johnson, Irene Johnson, Roger Johnson, Lois Johnson, Ivan Pixler, Irene Flanagan, Helen E. Morten, and Joseph W. Morten, Defendants/Counterclaimants/Appellees.

No. 2–66492.

Court of Appeals of Iowa.

Dec. 29, 1982.

Harold W. White and Richard Meyer of Fitzgibbons Brothers, Estherville, for plaintiffs-appellants.

Robert B. Scism of Scalise, Scism, Gentry & Rich, Des Moines, for defendants-appellees Joseph W. Morten, Helen E. Morten and Ivan Pixler.

Robert J. Egge of Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, for defendant-appellee Emma Louise Paterson and Marvelle Feller.

Donald H. Molstad of Shuminsky, Shuminsky & Molstad, Sioux City, for defendant-appellee Irene Flanagan.

J.R. Miller of Miller, Miller, Miller & Green, Cherokee, for defendants-appellees Louie Katzman, Lucille Hahn, Andrew C. Johnson and Irene Johnson.

OXBERGER, Chief Justice.

Plaintiffs appeal from judgment entered against them in this action to determine the parties' rights to the use of certain beach front property on Lake West Okoboji. Plaintiffs, owners of lots not adjacent to the beach, claim that they have easements by virtue of certain provisions of a 1905 plat which give them the right to access to the beach for bathing purposes and for the erection of docks and boathouses and by prescription. Defendants, owners of the beach front property in question, assert absolute title, free and clear of any alleged easements, and raise other affirmative defenses as well. Because this case was tried in equity, our review is de novo. Iowa R.App.P. 4. We reverse the decision of the trial court and remand for further findings.

Plaintiffs and defendants are all landowners in the Terrace Park subdivision which is located on the south shore of Lake West Okoboji. Green's Beach, a portion of which is the center of controversy in this case, abuts the south shore and is separated from Terrace Park by Okoboji Boulevard. In 1905, H.O. Green filed a plat of Terrace Park which dedicated certain areas (including streets and boulevards) to public use. The plat also contained the following provision:

"I, the said H.O. Green, do hereby expressly reserve and retain the title in fee to all that portion of land in said plat designated as parks and as Greens Beach, with the exception that each owner of a summer residence in this plat shall have the right to use said beach for bathing purposes, and the right of the use of the beach for the erection of a private dock, and a use of a portion of the shore line of said beach extending forty feet back from the water's edge and twelve feet in width along the water's edge for the purpose of erecting a private boat house."

In their petition, filed on March 18, 1976, plaintiffs claimed, as owners of inland lots, that they and their predecessors in title had access to the lake using Green's Beach as a result of the exception granted in the plat and also by their "actual open, adverse and notorious use of the access, ingress and egress to the lake across or on Greens Beach for a period of 50 years." Plaintiffs further alleged that defendants have prevented their access to the lake and their use of Green's Beach by fencing off a portion of the beach [1] and have executed conveyances among themselves so as to divide up the beach and establish fee title in themselves in derogation of plaintiffs' rights. The petition concluded with a two-fold prayer for relief—plaintiffs wanted the right to use Green's Beach under the 1905 plat quieted in them and also wanted defendants restrained from restricting plaintiffs' access to the lake through the beach.

Defendants filed various answers and amended answers raising a host of affirmative defenses including: plaintiffs' claim is barred by their failure to file claims to preserve their alleged easement under the Marketable Title Act (Iowa Code §§ 614.-34, .35); defendants have obtained fee title of the beach lots both through claim of title and by adverse possession; the alleged easement was unenforceable because of the vagueness of the dedication in the plat; and H.O. Green, the original grantor, abandoned any plan of creating easements across the beach by making later conveyances of portions of the beach free and clear of any easements or other forms of equitable servitude. Defendants also filed counterclaims alleging that plaintiffs' petition clouded their title to the beach lots and wanting absolute title to be quieted in them.

After a number of continuances were granted to avoid automatic dismissal under Iowa R.Civ.P. 215.1, trial to the court was commenced on September 30, 1980, and lasted three days. The court issued its findings, conclusions and decree on February 9, 1981. The court concluded that the language contained in the 1905 plat was not intended by H.O. Green to create an easement on Green's Beach in favor of the lot owners in Terrace Park. It was also determined that Green abandoned any plan he may have had for the development of Terrace Park by replatting the area after 1905 and by making a number of conveyances of Terrace Park lots without specifying the alleged easement with one exception—a 1908 warranty deed to one Irvin Tepley containing the easement. Finally, the court rejected plaintiffs' claim that they had established an easement by prescription or adverse possession since they did not prove continuous and hostile use of the beach as a means of access to the lake. Plaintiffs' petition was therefore denied and title to the beach lots was quieted in the various defendants except for Roger and Lois Johnson who did not enter an appearance and were not represented at trial. Plaintiffs initiated this appeal.

I. We must first determine the effect of that language in the 1905 plat which is at issue in this case. Plaintiffs claim that H.O. Green intended to create an easement appurtenant to the lots in Terrace Park; some defendants claim the plat created only an exception while others claim it is a revocable license. We do not decide this question solely on the basis of the words used in the instrument, however; instead, we must try to ascertain the intent of the grantor, both by looking at the instrument and by examining the attendant circumstances. In speaking of determination of the differences between exceptions and easements, the supreme court said:

We think, however, that the question whether a right reserved, excepted or created is one which runs with or is annexed to the land or is one of a temporary or personal character, is not ordinarily to be determined by the use of either of these words, but the intent of the parties is to be ascertained by looking to the entire instrument and the circumstances attending and characterizing the transaction which the writing witnesses....

---

1. The portion of the beach which is the subject of this litigation is a segment approximately 700 feet long bounded on the west by Father Flanagan's Boys' Home.

To use the language of the Minnesota court:

"The day is past for adhering to technical or literal meaning of particular words in a deed or other contract against the plain intention of the parties as gathered from the entire instrument." *Long v. Fewer* (Minn.), [53 Minn. 156] 54 N.W. 1071.

*McCoy v. Chicago, Milwaukee and St. Paul Railway Co.,* 176 Iowa 139, 143, 155 N.W. 995, 996–97 (1916); *see also Paul v. Blakely,* 243 Iowa 355, 358, 51 N.W.2d 405, 407 (1952) (regarding the differences between easements and licenses). An easement has been defined in this state as " 'a liberty, privilege, or advantage in land without profit, existing distinct from ownership of the soil, and because it is a permanent interest in another's land, with a right to enter at all times and enjoy it, it must be founded upon a grant by writing or upon prescription.' " *Independent School District of Iowa v. DeWilde,* 243 Iowa 685, 692, 53 N.W.2d 256, 261 (1952) (citations omitted).

With these principles in mind, we think it is clear that H.O. Green intended to create an easement in the 1905 plat. After retaining fee title to the parks and to Green's Beach, he specifically stated that "each owner of a summer residence in this plat *shall have the right to use said beach* for bathing purposes, and the right of the use of the beach for the erection of a private dock, and ... a private boat house" (emphasis added). The "right to use" language employed by Green indicates that he intended subsequent owners [2] to enjoy the liberty or privilege of using the beach despite his retention of fee title therein.

Our conclusion that an easement was intended and created by H.O. Green is supported by subsequent events and patterns of events. At this point, it is necessary to establish more fully the factual background. After he filed the plat in 1905, H.O. Green conveyed several lots in the then-new Terrace Park subdivision. Of these deeds, apparently only one, a 1908 deed to one Irvine Tepley, contained a direct reference to the easement granted in the 1905 plat. In addition, Green replatted Terrace Park a number of times, but neither the beach nor the lots involved in this action have ever been vacated. In 1941, H.O. Green and his wife conveyed the beach to a religious order which in turn conveyed the beach to H.O. Green's surviving son, Joseph, in 1953. Four days later, Joseph conveyed the beach to Father Flanagan's Boys' Home. None of these deeds contained any easement language.

In 1956, Joseph Green and his wife and the Boys' Home executed a deed conveying the beach to the State of Iowa:

... *except that the grantors* herein, Joseph E. Green and Rose Marie Green, hereby reserve and *retain in,* to and over the property hereby granted and aliened separate and *several easements for each of the separate, several and various lots in the Terrace Park* and the various replats thereof as subsequently made, now owned by them or either of them, which easements shall and do vest and confirm in them as the owner or owners of any of such lots the right to use said property hereby conveyed for bathing purposes and the right to the use of the said beach for the erection of a private dock....

(emphasis added). The State did not accept this deed and has never claimed any title to or interest in Green's Beach. Defendants, either for themselves or through their predecessors in title, obtained quit claim deeds from Joseph Green and his wife in the early 1970's for various lots in the beach area here in question. Defendants then constructed a chain link fence around their beach lots, preventing outsiders, including plaintiffs, from having access to the lake in that immediate area.

---

2. Although the plat refers to "each owner of a summer residence" as the beneficiary of the easement, we conclude that everyone concerned, including H.O. Green himself, came to regard the easement as belonging to lot owners in Terrace Park and not only to those who owned summer residences. In addition, there was never any complaint about use of the beach by lot owners as opposed to owners only of summer residences.

Plaintiffs Maddox obtained title to Lots 2, 3 and 4 of Block 4 of Terrace Park by warranty deed from William Woodcock in 1969 "including all rights the grantors possess in connection with access to said property and from said property to Lake Okoboji, including rights to use of shoreline for bathing, boating, erection of private dock and erection of boathouse." Maddox also obtained Lot 15 in block 4 from Woodcock, but that deed did not include the language referring to use of the shoreline. Woodcock had obtained those lots by a 1906 deed from H.O. Green which contained no reference to the easement established in the 1905 plat. Maddox is the predecessor in title to the lots now owned by plaintiffs Nolte and Evans and defendants Katzman and Hahn. Plaintiff Breidinger obtained Lot 7 in Block 9 in 1956 as a gift from his aunt and uncle who had bought it from H.O. and Judith Green in 1924.

As we indicated above, the evidence presented at trial relating to the use of Green's Beach during the years after the 1905 plat was filed indicates that it was generally assumed that the lot owners in Terrace Park had an easement as set forth in the plat. Plaintiff Nolte testified that he vacationed at Okoboji with his parents in the 1930's and saw several docks in the Green's Beach area. During later visits in the 1950's he was told by the owners of two different resorts that the lot owners had easements to the lake. Starting in 1960, Nolte vacationed there every year until 1976. He testified that, during that time, he became acquainted with the general custom of usage of Green's Beach which was that lot owners had an easement to the beach and were entitled to erect a dock. He bought his Terrace Park lot from Maddox in 1970 with the understanding that the purchaser of such a lot was also entitled to an easement to the lake through Green's Beach. Breidinger and Maddox gave similar testimony regarding the custom allowing the lot owners to erect docks on the beach. Breidinger also testified that he built a dock there sometime during the mid-1960's and heard no complaints from anyone, including defendant Pixler who was living there at the time.

Lester Danbom, who does not live in Terrace Park but used to operate a boat livery there, testified that he formerly lived in that area for about thirty-five years and saw Terrace Park residents build many docks up and down Green's beach. At one point he had a conversation with H.O. Green who said that he owned the beach but the property owners had easements to go to and from the lake.[3]

We therefore are of the opinion that plaintiffs have established their right to easements across Green's Beach for access to Lake West Okoboji as a result of both the unequivocal language contained in the 1905 plat and the subsequent patterns and customs regarding the usage of the beach. It is of no legal consequence that most of the Terrace Park lot conveyances after 1905 did not contain references to the easement. As stated in *Levine v. Chinitz,* 233 Iowa 212, 218, 8 N.W.2d 735, 738 (1943): "When an easement once becomes appurtenant, future conveyances of the dominant estate, whether with or without reference to such right of easement, carry with such conveyances as appurtenant thereto the reservation or easement in the original deed." We believe H.O. Green intended the easements granted in the plat to be appurtenant to the lots in Terrace Park; hence, it was not necessary for every subsequent conveyance in the Park to contain an explicit provision regarding the easement.

Nor does it affect the validity of the easement here that it was granted in a plat rather than in a deed or other form of conveyance. The trial court recognized that "a grantee to whom a conveyance is

<hr/>

3. We agree with plaintiff that H.O. Green's comments are admissible against defendants' hearsay objections under the rule enunciated in *Egan v. Egan,* 212 N.W.2d 461 (Iowa 1973). To paraphrase: "[Green's] statements were admissions in disparagement of his interest in the land and as such may be used vicariously against defendant as one asserting an interest in the land under him." 212 N.W.2d at 465.

made by reference to a map or plat acquires a private right or easement in parks and other open areas shown on the map or plat." The court went on, however, to say "the 1905 plat did not establish Green's Beach as a public park or open area. Green's Beach was not dedicated to public use." The court did not explain the consequences of those facts, nor did it give any reason or authority to support its apparent conclusion that, because the beach was not dedicated to a *public* use, no *private* rights may be created therein. We believe that Iowa law does recognize that a plat may provide for private uses and that the servient estate with respect to such uses need not be first dedicated to the public. *See Town of Mt. Vernon v. Young*, 124 Iowa 517, 100 N.W. 694 (1904). This point is well stated in *Bunns v. Walkem Development Co.*, 53 Tenn.App. 680, 694, 385 S.W.2d 917, 923 (1964):

> Independent of dedication, which must be for the benefit of the general public, lot owners may acquire an easement or property right in streets or parks by reason of reference thereto in their deeds, or by reason of a conveyance according to a plat which shows the existence of such facilities.

Thus, the easement granted in the 1905 plat has the same legal effect as if it had been explicitly granted in every subsequent deed or other instrument of conveyance.

■ II. Since we have determined that plaintiffs are entitled to an easement under the plat and subsequent customs of usage of Green's Beach, we consider the affirmative defenses raised by defendants which were not reached by the trial court. They first claim that the alleged easement is void since the plat language is too vague and does not specify where the easements are located. We do not agree that this vagueness is fatal. "Where the grant of an easement does not definitely locate it, and neither the servient nor the dominant owner locates it and they cannot agree on a location, a court of equity may determine its location." 25 Am.Jur.2d *Easements and Licenses* § 68 (1966).

■ Defendants also claim that plaintiffs' claim for an easement falls for their failure to comply with the claim preservation provisions of the Marketable Record Title Act, Iowa Code §§ 614.29–.38. However, § 614.36 specifically makes the Act and its requirements inapplicable to this case: "[t]his division shall not be applied * * * to bar or extinguish any easement . . . the existence of which is apparent from or can be proved by physical evidence of its use." We have determined that the plat created an easement and that its existence was apparent by its subsequent use by various Terrace Park lot owners; thus, plaintiffs were not required to preserve their claim under these statutes.

■ Finally, defendants claim that the trial court has no jurisdiction to order them to allow plaintiffs to build docks on their portions of the beach because administrative rules of the Iowa Conservation Commission govern the placement of docks on state-owned bodies of water (which includes Lake West Okoboji). We adopt the trial court's response to this contention: "[a]lthough the issuance of a permit [to build a dock] may be beyond the scope of the Court's jurisdiction, the Court would have equitable power to protect easement rights and thus establish the basis for issuance of a permit to a lot owner on application by the riparian property owner." This issue has no merit.

The finding of the trial court that plaintiffs do not have an easement across Green's Beach for access to Lake West Okoboji is reversed. The case is remanded for a determination of the location of plaintiffs' easements and for the entry of the appropriate equitable relief that will protect their rights.

REVERSED AND REMANDED WITH DIRECTIONS.